UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:07CV14-H

| | |
|---|---|
| FRESENIUS MEDICAL CARE ) <br> HOLDINGS, INC. d/b/a FRESENIUS ) <br> MEDICAL CARE NORTH AMERICA ) <br> a/k/a FRESENIUS, a New York ) <br> Corporation, and BIO-MEDICAL ) <br> APPLICATIONS OF NORTH ) <br> CAROLINA, INC. d/b/a BMA OF ) <br> MONROE f/k/a FMC OF MONROE, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BROOKS FOOD GROUP, INC., and ) <br> BROOKS FOOD GROUP, INC. ) <br> EMPLOYEE BENEFIT PLAN, ) <br> ) <br> Defendants. ) <br> _____) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the "Defendants' Motion to Dismiss Amended Complaint" (document #21) and "Memorandum in Support . . ." (document #22), both filed April 20, 2007.[1] On May 4, 2007, the Plaintiffs filed their "Memorandum in Opposition . . ." (document #23). The Defendants then filed their "Reply Memorandum . . ." (document #24) May 15, 2007. On May 16, 2007, the Plaintiffs filed a ". . . Motion to Strike . . ." (document #25). The Defendants have not responded to the Motion to Strike and the time for doing so has expired.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for determination.

---

[1] On May 18, 2007, the Honorable Frank D. Whitney denied the arguments in the subject Motion "without prejudice to renew these arguments at summary judgment or trial." Due to consent of the parties, the case was assigned to the undersigned June 21, 2007. The undersigned has chosen to address the merits of the subject Motion at this point in the case rather than at summary judgment or trial.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will <u>grant in part</u> and <u>deny in part</u> the Defendants' Motion to Dismiss, and will <u>deny</u> the Plaintiffs' Motion to Strike, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This is an action for payment of medical services allegedly provided by the Plaintiffs to a participant in the Defendants' employee benefit plan. The Plaintiffs seek, as the patient's assignees, benefit payments and damages for an alleged breach of fiduciary duty pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, and, on their own standing, damages for an alleged violation of the Medicare as Secondary Payer Act, 42 U.S.C. § 1395y.

Accepting the allegations of the Amended Complaint as true, Clarence Kirkpatrick was employed by Defendant Brooks Food Group, Inc. and participated in the Employee Benefit Plan. His spouse, Margaret Kirkpatrick, also participated in the Plan, and it is her medical treatment at a kidney dialysis center from July 17, 2003 to January 30, 2005, which is the subject of this action.

The dialysis center was designated a non-Network facility under the Employee Benefit Plan. However, because there was no in-Network facility within one hundred miles of Ms. Kirkpatrick, the Plan's terms provided that it would pay the in-Network rate of 85% rather than the non-Network rate of 70% of the treatment. The Plan was Ms. Kirkpatrick's primary insurer and Medicare was responsible for secondary payment of her medical expenses.

According to the Plaintiffs, Ms. Kirkpatrick incurred $1,509,274.74 in medical expenses, and in return for these services assigned her benefits and rights to payments to the dialysis center. Ms. Kirkpatrick signed two documents which the Plaintiffs refer to as assignments of her rights. The

2

first, signed May 27, 2003, provides:

# Fresenius Medical Care

MEDICAL INFORMATION RELEASE AND ASSIGNMENT OF BENEFITS

Authorization for Release of Medical Benefits

Authorization is hereby granted to FMC MONROE to release any information concerning my care for the purpose of claims to Federal, State, City or town governmental agencies, third party payers of all categories, doctors and hospitals.

Assignment of Insurance Benefits

I hereby authorize payment directly to FMC MONROE benefits otherwise payable to me but not to exceed the companies regular charges due as a result of this or subsequent insurance claims. I understand I am financially responsible to FMC MONROE for charges not covered by this agreement.

Assignment of Medicare Insurance Benefits

I certify that the information given by me in applying for payment under Title XVIII of the Social Security Act is correct. I authorize any holder of medical or other information about me to release to the Social Security Administration (Or its intermediaries or carriers) information needed for the filing of any medical claim. I request that payment of authorized benefits be made on my behalf.

I permit a copy of these authorizations to be used in place of the original.

Signature of Insured     [/s/ Margaret Kirkpatrick]    Date    [5-27-03]
Signature of Patient     [/s/ Margaret Kirkpatrick]    Date    [5-27-03]
Witness Signature     [/s/ Jay Crook]    Date    [5-27-03]

**Fresenius Medical Care North Carolina ● Dialysis Services**
FMC Monroe #1415 1338 E. Sunset Drive Monroe, NC 28112 1-704-239-8407 Fax: 1-704-282-4232

The second assignment, signed August 16, 2005, provides:

**ASSIGNMENT OF BENEFITS**

I hereby assign my benefits to ***Fresenius, for services provided to me by ***Fresenius. I hereby certify that the insurance information that I have provided is true and accurate as of dates of service. I am fully aware that having health insurance

does not absolve me of my responsibility to ensure that my medical bill is paid in full. I also understand that my insurance company may not pay 100% of the amount of the medical claim and I may be responsible for any and all amounts not payable by my insurance company.

I hereby authorize \*\*\*Fresenius to submit claims, on my behalf, to the insurance company listed on the copy of the current insurance card or insurance information I have provided in good faith.

I hereby instruct and direct my Insurance Company to pay my healthcare benefits directly to \*\*\*Fresenius. If my current policy prohibits direct payment to provider of service, I hereby further instruct and direct my Insurance Company to make the check payable to me but to mail it directly to \*\*\*Fresenius for the professional or medical expense benefits allowable, which would otherwise be payable to me under my current insurance policy as payment towards the total charges for the professional services rendered.

This is a direct and express assignment of all of my rights and benefits under this policy. This payment will not exceed my indebtedness to the above mentioned assignee, and I have agreed to pay, in a current manner, any balance of said professional service charges over and above this insurance payment. Upon receipt of said check, I authorize \*\*\*Fresenius to endorse and deposit checks received on my account on my behalf, even when written as payable to me.

I authorize the release of any information pertinent to my case to any insurance company, adjuster, or other released payer, including an employer health plan, as well as to our attorney in the event of their involvement in this case. I authorize \*\*\*Fresenius to be my personal representative, which allows it to: (1) submit any and all appeals when my insurance company denies benefits to which I am entitled, (2) submit any and all requests for benefit information from my insurance company, and (3) initiate formal complaints to any State or Federal agency that has jurisdiction over my benefits. I fully understand and agree that I am responsible for full payment of the medical debt if my insurance company has refused to pay 100% of my benefits, within ninety (90) days of any and all appeals or request for information. I also agree that any fines levied against my insurance company will be paid to \*\*\*Fresenius for acting as my personal representative.

A photocopy of this Agreement shall be considered as effective and valid as the original.

[/s/ Mrs. Margaret W. Kirkpatrick]
Signature of Patient

    [/s/ Clarence Kirkpatrick]
    Signature of Policy Holder
        [8-16-05]
    Date

    [/s/ [signature illegible]]
    Witness
        [08/16/05]
    Date

The Plan paid only $187,263.57 of the billed claims, which it explained as 85% of the usual and reasonable charges for the services provided. The dialysis center, an entity named "BMA of Monroe a/k/a Fresenius Medical Care North America, Inc.," appealed this decision and received the final denial on January 16, 2006. In addition, due to the large outstanding bill, Medicare has allegedly paid more on these claims as the secondary payer than it would have had the Defendants made the additional payments for which the Plaintiffs allege they are responsible.

These underlying facts are not disputed at this time; rather the dispute is whether the above-quoted assignments give standing to the named Plaintiffs to pursue these claims.

The original Plaintiff (Bio-Medical Applications of North Carolina, Inc. d/b/a BMA of Monroe as Assignee of Margaret E. Kirkpatrick) filed its Complaint in this Court on January 11, 2007, and the Amended Complaint, adding Plaintiff Fresenius Medical Care Holding, Inc., was filed March 29, 2007. On April 20, 2007, the Defendants filed the subject Motion which has been fully briefed and is, therefore, ripe for determination.

On May 16, 2007, the Plaintiffs filed their Motion to Strike the Defendants' Reply Memorandum arguing that it merely restates arguments which have already been briefed. The undersigned respectfully disagrees, and has considered the Reply Memorandum. Accordingly, the Plaintiffs' Motion to Strike will be <u>denied</u>.

## II. DISCUSSION OF CLAIMS

**A. Standard of Review**

The existence of subject matter jurisdiction is a threshold issue. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998). Accord Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); and Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir.1999).

The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

Similarly, "a motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996)(en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff, assuming its factual allegations to be true. See, e.g., Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

### B. 12(b)(1) Motion to Dismiss – Standing

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Defendants make several different, though related arguments that this Court lacks subject matter jurisdiction essentially because the Plaintiffs' derivative standing is invalid.

The Defendants first note that the Fourth Circuit has not previously addressed derivative standing in ERISA cases. However, while there is no published Fourth Circuit authority on point, the majority of courts considering the issue have held that in the absence of a valid anti-assignment provision in the ERISA plan document,[2] when an insured patient assigns her health care benefits to a healthcare provider, the provider has standing to enforce the patient's rights in any subsequent ERISA action. See, e.g., HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co., 240 F.3d 982, 991 (11th Cir. 2001) (health care provider assignee had standing under ERISA to sue for recovery of health benefits); Hermann Hosp. v. MEBA Medical & Ben. Plan, 959 F.2d 569, 574 (5th Cir. 1992) (same); Arkansas Blue Cross & Blue Shield v St. Mary's Hosp., Inc., 947 F2d 1341,

---

[2] The Defendants do not assert the presence of an anti-assignment provision in the Plan.

1351 (8th Cir. 1991) (same); Kennedy v Connecticut Gen.Life Ins. Co., 924 F2d 698, 700-01 (7th Cir. 1991) (same); Misic v Building Service Employees Health & Welfare Trust, 789 F2d 1374, 1377-78 (9th Cir. 1986) (same); Cagle v Bruner, 921 F Supp 726, 735 (M.D. Fla. 1995) (same); Protocare of Metro. N.Y. v Mutual Ass'n Adm'rs , 866 F Supp. 757, 760-61 (S.D.N.Y. 1994) (same); and Washington Hasp. Center Corp. v Group Hospitalization & Medical Services, Inc., 758 F. Supp. 750, 752 (D.D.C. 1991) (same). The Court agrees with the reasoning in these cases and, in the absence of any Fourth Circuit opinion to the contrary, will follow this authority.

The Defendants next argue that even if derivative standing is recognized, the assignments in this case were not to the original Plaintiff, "Bio-Medical Applications of North Carolina, Inc. d/b/a BMA of Monroe as Assignee of Margaret E. Kirkpatrick."[3] The Defendants did, however, recognize "BMA of Monroe a/k/a Fresenius Medical Care North America, Inc." ("BMA of Monroe") in their appeal process. Indeed, the final claim denial specifically references this entity, which is simply denominated "Fresenius."

It has been held that an ERISA plan essentially ratifies an assignment when it makes medical benefits payments to a purported assignee, and the Plan may not later object to the assignment when a coverage dispute results in litigation, even where the Plan's provisions contain an anti-assignment provision. See, e.g., Hermann Hosp., 959 F.2d at 574.[4] Analogizing this principle to the facts at

---

[3] As the Defendants point out, the issue of standing relates to the original Plaintiff as "standing is to be determined as of the commencement of suit." Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.5 (1992).

[4] Recognizing that unpublished decisions have no precedential value, the Court notes that in an unpublished decision, where an ERISA plan did not object initially to an assignment, but instead made payments to the assignee, the Fourth Circuit permitted the assignee to "stand in the shoes" of the insured and enforce the insured's ERISA rights notwithstanding an otherwise valid anti-assignment provision. See Yarde v. Pan American Insurance Co., 67 F.3d 298 (table) (4th Cir. 2005).

8

issue here, where there is no anti-assignment provision in the Plan documents, the Defendants cannot allow an entity to appeal a denial and essentially ratify an assignment and then claim a lack of standing when litigation ensues. The Defendants seek to avoid this result by arguing that they did raise the issue of standing during the appeal. However, the issue raised was not the validity of the assignments as to the named entities, but the fact that the assignment to Fresenius was dated after much of the appeal had taken place (an argument the Defendants have not made in support of the instant motion).

The Defendants also argue that "BMA of Monroe" is not a valid entity because it is not registered as an assumed name for BMANC. However, if the Defendants believed BMA of Monroe to be an invalid entity, this issue should have been raised during the appeal process. Furthermore, it appears from the denial letter that the Defendants made payments to the entity calling itself "BMA of Monroe a/k/a Fresenius Medical Care North America, Inc.," and that this was the entity to which the Defendants subsequently sent documents filed in the appeal. Thus, as both a matter of law and equity, the Defendants should not be permitted to use the invalidity of an entity they quite obviously presumed to be valid to secure dismissal of the instant claims.

The Defendants also contend that the actual language of the assignments, even if found to name the original Plaintiff here, is inadequate to assign Ms. Kirkpatrick's rights. To the contrary, however, the subject assignments plainly intend to transfer the patient's rights to payment to the Plaintiffs in exchange for treatment; to hold otherwise would clearly elevate form over substance. See, e.g., Cole v. Travelers Ins. Co., 208 F. Supp. 2d 248, 260-61 (D. Conn. 2002) (finding standing under ERISA adequate to survive a motion to dismiss where provider alleged assignment of the beneficiary's right to reimbursement for the care provided).

9

Finally, the Defendants' largely technical arguments are in sharp contrast – and conflict – with the broader principles affirming assignment and derivative standing, that is, the authority which recognizes that "[t]o deny standing to health care providers as assignees of beneficiaries of ERISA plans might undermine Congress' goal of enhancing employees' health and welfare benefit coverage. [To not allow derivative standing] would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them 'up-front.'" Texas Life, Accident, Health & Hospital Service Ins. Guaranty Ass'n v. Gaylord Entertainment Co., 105 F.3d 210, 215 (5th Cir. 1997) (citations omitted).

### C. 12(b)(6) Motion to Dismiss

#### 1. Count One

The Defendants move for dismissal of Count One of the Amended Complaint, which seeks recovery of the Plaintiffs' billed charges for the dialysis services provided, because the Plaintiffs have not provided evidence to establish the usual and reasonable charge for these services. Thus, the Defendants argue, they have not been put on notice as to the nature and extent of the claim against them. It is evident from the pleadings however, that the Plaintiffs believe their billed charges to be the usual and reasonable charges for the services provided. Of course, whether this assertion will ultimately be found persuasive is yet to be determined, but the Defendants are sufficiently on notice of the nature and extent of the claim against them at this stage of the litigation.

The Defendants also argue that the $1,322,165.25 sought by the Plaintiffs exceeds the "Maximum Lifetime Benefit Amount" of one million dollars as allowed by the Plan. However, while it appears likely that Ms. Kirkpatrick's lifetime benefit amount has been exceeded, this

argument should be preserved for summary judgment motions after the completion of discovery.[5]

## 2. Count Two

The Defendants next argue that the Plaintiffs' Breach of Fiduciary Duty Claim should be dismissed because it does not seek to remedy an alleged harm to the Plan as a whole, and because Count One's claim for benefits constitutes an adequate remedy under ERISA.

It is well established that a breach of fiduciary duty claim under ERISA is "primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985). See also LaRue v. DeWolff, Boberg & Assoc., Inc., 458 F.3d 359, 362 (4th Cir. 2006) ("ERISA's fiduciary duty provisions are primarily concerned with protecting the integrity of the plan, which in turn protects all beneficiaries, rather than remedying individual wrongs") (citations omitted).

The Plaintiffs complain of the following acts:

> a. Plan failed to notify Employee or Patient of benefits it denied, in whole or in part, contrary to Plan provisions and 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1 (2001).
>
> b. Plan sanctions a method for calculating Usual and Customary rate for payment of participant claims which is in contradiction of Plan's plain and unambiguous language. This methodology systematically decreases Plan benefit payments and increases the amount participants are required to pay for out-of-network healthcare services.
>
> c. Plan operated under a conflict of interest by determining Usual and Reasonable reimbursement rates payable for Patient's dialysis treatments.

---

[5] The Defendants also assert the argument that the Plaintiffs seek $109,928.95 more in this action than it asserted was owed in the administrative appeal process – thus, not exhausting their administrative remedies as to this amount. While this argument may also prove meritorious if liability is established, it may ultimately be found to be moot in light of the Maximum Lifetime Benefit Provision.

Simply put, each of these claims relates directly to the Plaintiffs' individual complaints, that is, they would be adequately redressed with an award of benefits.[6]

First, the Plaintiffs express dissatisfaction with their individual notification, but do not assert that this impacts the integrity of the Plan as a whole. In addition, their claim that the Plan did not follow its terms in determining the usual and customary rate essentially mirrors the Plaintiffs' claim for benefits. However, as the Defendants correctly contend, where "a participant is provided adequate relief by the right to bring a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy in a breach of fiduciary duty claim under Section 1132(a)(3)." Blair v. Young Phillips Corp., 235 F. Supp. 2d 465, 472 (M.D.N.C. 2002) (citations omitted). And finally, the allegation that a conflict of interest was present influences the legal standard to be applied to the Plaintiffs' claims, but does not impact the integrity of the Plan as a whole.

Accordingly, the Defendants' Motion to Dismiss Count Two will be granted.

### 3. Count Three

In 1981, Congress enacted the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395y(b)(2), in response to the "skyrocketing" cost of Medicare in order to "reduce federal spending and to protect the financial well being of the Medicare program." United States v. Travelers Insurance Co., 815 F. Supp. 521, 522 (D. Conn. 1992). The provisions were enacted to lower overall federal Medicare disbursements by requiring Medicare beneficiaries to exhaust all available private insurance coverage before resorting to their Medicare coverage to cover their medical expenses. See

---

[6]The Plaintiffs failed to address this issue in their Memorandum in Opposition. Thus, the Court's review of Count Two was limited to the Plaintiffs' brief explanation in the Amended Complaint.

United States v. Rhode Island Insurers' Insolvency Fund, 80 F.3d 616, 618 (1st Cir. 1996); and Brown v. Thompson, 252 F. Supp. 2d 312 (E.D. Va. 2003). In other words, usually (and as the parties agree is the case here) the private insurer has "primary" responsibility to make payments to the limits of existing coverage, and Medicare's coverage is secondary. 42 U.S.C. § 1395y(b)(2)(A).

Pursuant to the MSPA, which establishes a private cause of action "for double damages against a primary plan which fails to provide for primary payment," the Plaintiffs allege that Medicare has made payments in excess of what it would have owed as secondary payer due to the Defendants' failure to pay additional funds. 42 U.S.C. § 1395y(b)(3). The Defendants argue, however, that the "Plaintiffs' MSP[A] claim should be dismissed because Defendants have legitimate legal and equitable defenses for denying the additional payments sought by Plaintiffs under the Plan, and Defendants' liability has not yet been established under the Plan by judgment, settlement or other means."

> The MSPA provides that a primary insurer shall reimburse Medicare when:
>
> it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii). The MSPA makes it a condition precedent to reimbursement that there be a "demonstrated" responsibility to pay for items or services. Glover v. Liggett Group, Inc., 459 F.3d 1304, 1309 (11th Cir. 2006). Expanding on this condition precedent, the Eleventh Circuit reasoned as follows:

> Until Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), Defendants' obligation to

reimburse Medicare does not exist under the relevant provisions. Therefore, it cannot be said that Defendants have "failed" to provide appropriate reimbursement. Based on this language, we conclude that an alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated *before* an MSP private cause of action for failure to reimburse Medicare can correctly be brought under section 1395y(b)(3)(A).

Id. (emphasis in original). The Glover Court further reasoned that without this condition precedent requirement, "defendants would have no opportunity to reimburse Medicare *after* responsibility was established but before the [double damages] penalty attached." Id. (emphasis in original). To hold otherwise would open a primary insurer to double damages each time it contests a claim, rather than only when it fails to pay after responsibility has been established.

Applying the law to the facts of this case, there has clearly been no finding at this time of the Defendants' responsibility for the contested payments. If and when such a determination is made, the Defendants should understand their responsibility to reimburse Medicare for funds which otherwise would not have been paid on Ms. Kirkpatrick's behalf. If, at that time, the Defendants fail to reimburse the appropriate funds, then the MSPA allows for a private cause of action for double damages.

For the foregoing reasons, the Defendants' Motion to Dismiss the Plaintiffs' MSPA claim must also be granted.

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The Defendants' Motion to Dismiss the Amended Complaint (document #21) is **GRANTED** to the extent it seeks dismissal of the Plaintiffs' Breach of Fiduciary Duty Claim (Count Two) and the Medicare as Secondary Payer Act Claim (Count Three), but **DENIED** as to the

Plaintiffs' Claim for Benefits (Count One).

    2. The Plaintiffs' Motion to Strike (document #25) is **DENIED**.

    3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

Signed: August 28, 2007

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge